Willie L. WATSON, Jr., Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 785S305.

Supreme Court of Indiana.

May 13, 1987.

Robert R. Garrett, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

This is a direct appeal from a conviction of murder following jury trial. The sole

issue presented is whether the trial court erred in refusing to permit a co-offender to be examined regarding the potential sentences he was spared in exchange for his testimony.

The State initially filed charges of murder and felony murder and sought to impose the death penalty against defendant-appellant Willie L. Watson, Jr., Patrick Jackson, and Johnny Griggs for the May 3, 1984, robbery and shooting death of Bronko Tarailo. The State subsequently withdrew the charges against Griggs in exchange for Griggs's agreement to plead guilty to a reduced charge of conspiracy to commit armed robbery, a class B felony, and his agreement to cooperate and testify against Watson and Jackson.

At Watson's trial, Griggs disclosed on direct examination the existence of the plea agreement and the reduction of charges from murder to conspiracy to commit armed robbery. He also revealed that the State would be recommending that he receive a twenty-year sentence. On cross-examination, defense counsel elicited testimony regarding the reduction of charges and the withdrawal of the death penalty request. The trial court, however, refused to permit questions regarding the length of possible sentences which Griggs would have faced on the two murder counts.

Defendant argues that this ruling prevented him from presenting evidence that by his plea agreement Griggs reduced his potential imprisonment from sixty to twenty years. The State contends that, since the jury knew that Griggs was avoiding the death penalty, the defense was sufficiently permitted to demonstrate the witness's possible bias, prejudice, and motive to lie. Under the facts of this case, we disagree.

While we in no way mean to depreciate the seriousness of Griggs's participation in the crime, we note the trial judge's observation during a bench conference that "we all know that he [Griggs] was probably not a candidate for the death penalty." Griggs played a significant lesser role in the crime than either Watson or Jackson. There is no indication that Griggs either instigated or planned the details of the crime. Griggs assisted in the crime by waiting in the car while Watson and Jackson robbed and murdered the victim. Griggs then drove his co-offenders to a nearby apartment where the stolen money was divided. Griggs himself stated on cross-examination that he did not believe that he would receive the death penalty in this case. Thus the disclosure that the State withdrew the death penalty request failed to tell the story as to Griggs's actual *quid pro quo* for testifying.

Since the time of trial of this case, the issue was reviewed in *Jarrett v. State* (1986), Ind., 498 N.E.2d 967. Emphasizing Justice Arterburn's admonition that a jury "should have before it all the relevant circumstances that cause or induce such witness to testify, including the rewards for such testimony," *Newman v. State* (1975), 263 Ind. 569, 572, 334 N.E.2d 684, 687, we held in *Jarrett* that the crucial role of full and proper cross-examination predominates over the State's concern that a jury may learn of otherwise irrelevant sentencing information, and that counsel must be afforded a reasonable opportunity to explore and reveal the magnitude of the witness's inducement to testify.[1]

In accordance with *Jarrett*, we find that the questioning concerning Griggs's potential sentence for the dismissed murder charges should have been permitted, and that the error substantially impaired the reliability of the resulting conviction. The judgment of the trial court is reversed and the cause remanded for a new trial.

SHEPARD, C.J., and DeBRULER, J., concur.

PIVARNIK, J., continues to dissent for reasons stated in *Jarrett*.

GIVAN, J., dissents with opinion in which PIVARNIK, J., concurs.

1. Under the facts of this case, Griggs's sentence had not yet been determined at the time of his testimony. Thus, while the defense cross-examination may seek to emphasize the maximum punishment he realistically faced, it would be equally proper to permit the prosecutor to conduct redirect examination regarding the minimum penalties, including the minimum potential imprisonment in the event of good behavior.

GIVAN, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. I believe the State is correct in its observation that the fact the witness Griggs was escaping the death penalty by way of a plea bargain was sufficient to inform the jury of the bias and prejudice of Griggs. I also believe the State is correct when it observes that to allow appellant on the cross-examination of Griggs to go into all of the penalties he might be avoiding by his plea bargain would be to allow appellant to indirectly inform the jury as to the penalty range to which appellant was being subjected. The State is correct that such a procedure is improper. *State v. Williams* (1982), Ind., 430 N.E.2d 756; *Taylor v. State* (1981), Ind., 420 N.E.2d 1231.

Even if we would assume for the sake of argument that it was error to exclude the evidence of the various penalties, I cannot see where it would be reversible error to do so. I can see no benefit to knowing the detail of avoiding lesser penalties when the jury was fully advised the witness was avoiding the death penalty.

The trial judge was correct in his ruling and should be affirmed.

PIVARNIK, J., concurs.