**Michael W. BELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 13A05–9312–CR–457.**

Court of Appeals of Indiana.

Sept. 18, 1995.

David E. Mosley, Jeffersonville, for appellant.

Pamela Carter, Attorney General, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

BARTEAU, Judge.

The trial judge denied Bell's motion for change of judge. Bell contends that doing so amounts to an abuse of discretion requiring reversal of his convictions. We agree, reverse the convictions, and remand with instruction to grant Bell's motion for change of judge.

### FACTS

The facts pertinent to this issue are that Bell was charged with ten counts relating to the sale or purchase of marijuana and co-

caine. One of the counts alleged a conspiracy with Kenny Richardson to deal marijuana. Richardson was granted use immunity and testified against Bell.

Prior to trial, Bell filed a verified motion for change of judge pursuant to Ind.Code 35–36–5–2 and Criminal Rule 12. The motion alleged that Bell's attorney, through a conversation with the Crawford County Sheriff, discovered that the trial judge had privately visited Richardson, Bell's alleged co-conspirator, in jail and provided Richardson with legal research. It further alleged that shortly thereafter, Richardson was granted use immunity by the State for his testimony against Bell. Accompanying the motion were affidavits by the Crawford County Sheriff, Bell, and Bell's attorney.

The Sheriff's affidavit related that Kenny Richardson was transported from the Crawford County Jail to the Harrison County Jail in July of 1993 and that upon Richardson's return from the Harrison County Jail he informed the Sheriff that the trial judge had brought him a document while he was incarcerated at the Harrison County Jail.

Bell's affidavit related that he had been made aware that the trial judge had engaged in ex parte communication with a witness against him and furnished legal advice in the form of case law or statutes and that shortly thereafter the witness was granted immunity. Bell's affidavit further stated his belief that the judge was biased and prejudiced against him and could not afford him a fair trial.

Defense counsel's affidavit related that upon learning from the Crawford County Sheriff of the meeting between the trial judge and Richardson, he immediately confronted the trial judge with the information, and that the trial judge admitted meeting with Richardson and providing him with case law concerning excessive attorney fees. The affidavit relates that the trial judge advised defense counsel that he was an Attorney at Law and would furnish copies of legal cases and statutes to anyone that so asked him. The trial judge disqualified himself from Richardson's case.

## DISCUSSION

■ In a criminal proceeding, we review the denial of a motion for change of judge for a clear abuse of discretion. *Mahrdt v. State* (1994), Ind.App., 629 N.E.2d 244, 249, *trans. denied.* An effective gauge of the parameters of judicial discretion is the Indiana Code of Judicial Conduct. The Code of Judicial Conduct specifically prohibits a trial judge from engaging in ex parte communications. Canon 3(B)(8) provides:

> (8) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties, concerning a pending or impending proceeding, ...

An exception to the prohibition against ex parte conversations is recognized for scheduling, administrative or emergency purposes that do not deal with the substantive matters or issues on the merits, so long as the judge reasonably believes no party will gain a procedural or tactical advantage as a result of the ex parte communication and the judge promptly notifies the parties of the ex parte communication and allows them an opportunity to respond. Jud.Canon 3(B)(8)(a).

In the case before us, the scope of the conversation between the trial judge and Richardson is unknown. The trial judge did not disclose that the meeting had occurred until confronted by defense counsel, and never discussed the extent of his meeting with Richardson. What was known to Bell at the time he made his motion is essentially the same that is known by this court: that a private meeting occurred between the trial judge and one of the principal witnesses against Bell, that the judge disqualified himself from Richardson's case, which was a companion case to Bell's, and that the judge did not voluntarily disclose this meeting to all parties to the litigation.

Canon 3(E)(1) of the Indiana Code of Judicial Conduct provides:

> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be ques-

tioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding; ....

■ As noted by Justice Shepard in his recusal opinion in *Tyson v. State* (1993), Ind., 622 N.E.2d 457, 459, the test under Canon 3(E)(1), formerly Canon 3(C)(1), is "whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality."

The question is not whether the judge's impartiality is impaired in fact, but whether there exists a reasonable basis for questioning a judge's impartiality. *In re Beard*, 811 F.2d 818 (4th Cir.1987). Concerns about public confidence in the judicial system underly Canon 3. *See United States v. Hollister*, 746 F.2d 420 (8th Cir. 1984). A judge has a duty to promote public confidence in the impartiality of the judiciary. Ind.Judicial Conduct Cannon 2.

*Tyson*, 622 N.E.2d at 459. A judge must disqualify himself where his impartiality might reasonably be questioned. *Id.* at 460; *Mahrdt*, 629 N.E.2d at 248.

■ Canon 3(B)(8) specifically prohibits a judge from engaging in ex parte conversations related to a case unless purely related to scheduling, or administrative or emergency in nature. The trial judge did not allege the meeting with Richardson was related to scheduling, administrative issues or of an emergency nature. In fact, the trial judge made no effort at all to explain the nature of his meeting with Richardson or to assure Bell that the private meeting in no way impacted on his case. When Richardson was shortly thereafter granted use immunity for his testimony against Bell and the trial judge recused himself from Richardson's case, Bell's belief that the trial judge's impartiality might be in question was quite reasonable. The trial judge should have recused himself from Bell's case following his ex parte meeting with Richardson. Jud.Canon 3(B)(8).

By failing to do so, and failing to fully disclose the extent of his conversation with Richardson, the trial judge created an appearance of impropriety. It was an abuse of discretion to deny the motion for change of judge.

■ Even had we found the ex parte conversation with Richardson insufficient by itself to require recusal, later actions by the trial judge support Bell's contention that the level of impartiality required to preside over this case was impaired. Particular instances supporting impaired impartiality on the part of the trial judge include refusing Bell's offer of proof in support of his Motion for New Trial and renewed Motion for Change of Judge prior to Bell's sentencing hearing, questioning defense counsel's integrity for communicating with the Commissioner of this court, refusing Bell a hearing on his renewed Motion for Change of Judge and entering an "Order Correcting Errors" purporting to strike from the record defense counsel's affidavit concerning the meeting with the trial judge and prohibiting the parties and witnesses from commenting "or to ask or to answer questions concerning same."

■ "In order to have faith that our judicial system operates providently, the public must have confidence in the procedure by which our courts render decisions." *Matter of Guardianship of Garrard* (1993), Ind.App., 624 N.E.2d 68, 70. The undisclosed ex parte communication, combined with the trial judge's demeanor, rulings and orders subsequent to the guilt phase of the trial, negatively impact on the public's confidence in the integrity of our judicial system.[1] These events require that Bell be provided a new trial before an impartial jurist.

### EVIDENTIARY QUESTIONS

■ Because the question of the extent defense counsel may delve into the penalties avoided by the confidential informant in exchange for his testimony may arise in the event of retrial, we will briefly address the issue. As has been often noted, a defen-

---

**1.** The record actually reflects two instances in which the audience in the courtroom booed the trial judge's rulings.

dant's interest in getting before a jury any and all inducements a witness receives in exchange for testifying is of utmost importance and outweighs any perceived harm to the State in having potential penalties before the jury. *Watson v. State* (1987), Ind., 507 N.E.2d 571, 572; *Jarrett v. State* (1986), Ind., 498 N.E.2d 967, 968. The State here argues that because the confidential informant's plea agreement was culminated prior to Bell's trial and did not require him to testify against Bell, it is distinguishable from the above cases. We fail to see the distinction. His service as a confidential informant, during which time he implicated Bell as a drug dealer, was rewarded with a plea agreement. Therefore, for implicating Bell, he received a reward. The jury should know the full extent of the reward the confidential informant received. The fact the plea agreement did not require the confidential informant to testify at Bell's trial is of no significance.

REVERSED AND REMANDED.

RUCKER and CHEZEM, JJ., concur.